IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Esteban Baron Beltran, | ) |
|                        Petitioner, | ) |
| vs. | ) **ORDER GRANTING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION** |
| Pamela Bondi, Attorney General; Kristi Noem, Secretary, U.S. Department of Homeland Security; Department of Homeland Security; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; David Easterwood, Acting Director, Saint Paul Field Office Immigration and Customs Enforcement; and Kelly Leben, Sheriff of Burleigh County, | ) Case No.: 1:25-cv-258 |
|                        Respondents. | ) |

Before the Court is Petitioner Esteban Baron Beltran's motions for preliminary injunction and hearing filed on November 7, 2025. See Doc. Nos. 6 and 8. Beltran is a Mexican citizen who is currently in Immigration and Customs Enforcement ("ICE") custody at the Burleigh-Morton County Detention Center in North Dakota facing removal proceedings. Beltran has petitioned this Court for habeas corpus relief under 28 U.S.C. § 2241 and has moved to expedite the petition. See Doc. Nos. 1 and 5. Additionally, Beltran has moved for a preliminary injunction enjoining the Respondents from moving him outside the boundaries of the District of North Dakota, and ordering his release from custody, or alternatively, granting him a bond hearing before an immigration judge. See Doc. Nos. 3 and 8. The Court denied Beltran's request for a TRO. See Doc. No. 9. Beltran has also moved for a hearing on his motion for a preliminary injunction. See Doc. No. 6. For the reasons explained herein, the Petitioner's motion for a preliminary injunction (Doc. No. 8)

1

is **GRANTED** as detailed below. Oral argument is not necessary; therefore, the Petitioner's motion for a hearing is **DENIED**. See Doc. No. 6.

I.      **BACKGROUND**

Beltran is a citizen of Mexico who entered the United States without inspection on or about October 28, 2020. See Doc. No. 1. Beltran is a resident of Hennepin County, Minnesota. Id. He is married to a United States citizen and has a one-year-old son who is a United States citizen. Id. On November 3, 2025, the Bureau of Indian Affairs reported "several individuals who spoke very little English" to Border Patrol. Id. This message was relayed to the St. Louis County, Minnesota Sheriff's Office. Id. A St. Louis County deputy initiated a traffic stop of the vehicle reported to be carrying the Spanish-speaking individuals. Id. The individuals included Beltran. The deputy reported the individuals to Border Patrol who took them into custody near Virginia, Minnesota. Id. Beltran was subsequently relocated to the Burleigh-Morton County Detention Center in Bismarck, North Dakota. See Doc. No. 11.

A Notice to Appear was issued by the Department of Homeland Security as to Beltran on November 3, 2025. See Doc. No. 1-4. The Notice to Appear represents that the Petitioner is being detained under the Immigration and Nationality Act ("INA"), Section 212(a)(6)(A)(i) because he was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and Section 212(a)(7)(A)(i)(I) because "at the time of application for admission, [he was] not in possession of a valid unexpired immigration visa, reentry permit, border crossing card, or other valid entry document." Id. On the Notice to Appear, the box indicating "[y]ou are an alien present in the United States who has not been admitted or paroled" is checked; however, the box indicating

"[y]ou are an arriving alien" is not checked. Id. The Notice states that Beltran was to appear before an immigration judge on November 6, 2025, in Fort Snelling, Minnesota.

A.    **PROCEDURAL BACKGROUND**

Beltran contends "ICE assert[ed] authority to detain Petitioner pursuant to the mandatory detention provisions of 8 U.S.C. section 1225(b)(2)(a)." See Doc. No. 1. In his Verified Petition for a Writ of Habeas Corpus, Beltran alleges that the Respondents' detention of him under 8 U.S.C. § 1225(b)(2)(a) violates his due process rights and federal law.[1] Beltran has also moved for a preliminary injunction as to his habeas corpus petition. See Doc. Nos. 3 and 8. Beltran seeks to enjoin the Respondents from moving him outside the boundaries of the District of North Dakota and to compel the Respondents to release him from custody or, alternatively, to afford him a bond hearing in accordance with 8 U.S.C. § 1226(a).

On initial review, this Court entered an Order denying the Petitioner's motion for a TRO (Doc. No. 3), directing the Respondents to respond to the Petitioner's motion for preliminary injunction (Doc. No. 8), and ordering a telephone status conference with the parties. See Doc. No. 9. The Respondents have filed responses. See Doc. Nos. 11 and 16. The Petitioner's motion for a preliminary injunction has been fully briefed and is ready for disposition.

B.    **8 U.S.C. §§ 1225 AND 1226**

This case is based on the interplay between two immigration statutes, 8 U.S.C. § 1225 and 8 U.S.C. § 1226, which both govern detention of non-citizens pending removal proceedings.

---

[1] The Petition alleges five counts: (1) declaratory relief, (2) violation of the INA, 8 U.S.C. § 1225(b)(2), (3) violation of the INA, 8 U.S.C. § 1226(a), (4) violation of the Fifth Amendment of the U.S. Constitution, and (5) unlawful denial of release on bond in violation of 8 C.F.R. §§ 236.1, 1236.1, 1003.19.

3

Beltran argues that he is subject to the discretionary detention framework established in Section 1226(a), which would provide for a bond hearing. The Respondents argue that Beltran is subject to mandatory detention under Section 1225(b)(2).

Section 1226(a) sets out the "default rule" for the discretionary detention of aliens "already present in the United States." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Under Section 1226(a), immigration authorities may make an initial determination as to detention, but aliens may then request a bond hearing before an immigration judge.[2] 8 U.S.C. § 1226(a); Jennings, 538 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) ("Federal regulations provide that aliens detained under section 1226(a) receive bond hearings at the outset of detention.")). At that hearing, an alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 586 U.S. 392, 397-98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)). It is clear Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal.

Section 1225 applies to "applicants for admission" which are defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission fall under either Section 1225(b)(1) or Section 1225(b)(2). Jennings, 583 U.S. at 287. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion." Id. Section 1225(b)(2) is a "catchall provision" that applies to almost all other applicants for admission not covered by Section 1225(b)(1). Id. at 289. Section 1225(b)(2) further states that "in the case of an alien who is an

---

[2] There is an exception to this provision provided in Section 1226(c) that applies to the detention of criminal aliens. Section 1226(c) imposes mandatory detention on "enumerated categories [of aliens] involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 289. Specific categories of "inadmissible" aliens are subject to mandatory detention. See 8 U.S.C. §§ 1226(c)(1)(A), (D), (E). Neither party has argued Section 1226(c) applies to Beltran.

4

applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal proceedings, without a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A) (citing 8 U.S.C. § 1229a); Jennings, 583 U.S. at 297 ("Read most naturally, §§1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

In summary, aliens detained under 8 U.S.C. § 1225(b) are not entitled to a bond hearing, persons detained under 8 U.S.C. § 1226(a) are—subject to exceptions found at Section 1226(c) which do not apply in this case.

## II.  LEGAL DISCUSSION

On November 7, 2025, Beltran motioned this Court for a preliminary injunction to enjoin the Respondents from moving him outside the boundaries of the District of North Dakota, and to compel the Respondents to release him from custody or, alternatively, to afford him a bond hearing in accordance with 8 U.S.C. § 1226(a). See Doc. No. 8. This Court will consider whether to grant the preliminary injunction Beltran seeks.

Rule 65 of the Federal Rules of Civil Procedure authorizes federal courts to issue TROs or preliminary injunctions. The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing. Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984). A preliminary injunction is an extraordinary remedy, with the burden of establishing the necessity of a preliminary injunction placed on the movant. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871

F.2d 734, 737 (8th Cir. 1989). The court determines whether the movant has met its burden of proof by weighing the factors set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

The *Dataphase* factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. "No factor is determinative, but the movant's probability of success is the most significant." Wilbur-Ellis Co. v. Jens, 139 F.4th 608, 611 (8th Cir. 2025) (citing Wilbur-Ellis Co. v. Erickson, 103 F.4th 1352, 1356 (8th Cir. 2024)).

### A.  DATAPHASE FACTORS
#### 1.  LIKELIHOOD OF SUCCESS ON THE MERITS

When evaluating a movant's likelihood of success on the merits, the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). At this stage, the Court need not decide whether the party seeking the preliminary injunction will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a preliminary injunction cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. The Eighth Circuit Court of Appeals has also held that of the four factors to be analyzed in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v.

6

Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court must consider Beltran's substantive claims in determining the likelihood of his success on the merits. Beltran claims that the denial of a bond hearing during his continued detention violates his Fifth amendment right to due process, federal law, and administrative procedures, and he is consequently being detained unlawfully. See Doc. No. 1. The central question in Beltran's habeas petition is which immigration detention framework applies to him. Beltran argues his detention is unlawful because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but rather to the discretionary detention provision in Section 1226(a), which requires he be given a bond hearing. The Respondents argue Beltran is properly detained under 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme because he entered and remained in the United States without proper admission and is thus "seeking admission."[3]

Having considered the parties' arguments, the Court concludes as a matter of law that 8 U.S.C. § 1225(b)(2)(A) is not applicable and Beltran is instead subject to the provisions of 8 U.S.C. § 1226(a). Thus, the continued detention of Beltran without a bond hearing is contrary to federal law. Respondents cite no binding authority to support their interpretation of the immigration statutes[4] and fail to properly grapple with *Jennings*. As a multitude of other federal district courts

---

[3] The Court notes the Respondents adopted this interpretation of their authority to detain aliens who entered the United States without admission in July of 2025. See Doc. No. 11. Specifically, Todd Lyons, acting director of ICE, released a memo to ICE employees stating, "DHS has determined that section 235 of the Immigration and Nationality Act (INA) rather than section 236, is the applicable immigration detention authority for all applicants for admission." The memo further states that "[f]or custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." U.S. Customs and Border Protection, Detention of Applicants for Admission, https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf.

[4] The Court acknowledges that the BIA adopted the Respondents' broad interpretation of 8 U.S.C. § 1225(b)(2) in the Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 2020 (Sept. 5, 2025). The Respondents rely on *Hurtado* in their

have concluded,[5] "Respondents' interpretation of the statute (1) disregards the plain meaning of Section 1225(b)(2)(A); (2) disregards the relationship between Sections 1225 and 1226; (3) would render a recent amendment to Section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation." Alejandro v. Olson, 2025 WL 2896348, at 6 (S.D. Ind. Oct. 11, 2025). As noted in the Petitioner's Memorandum in Support of Emergency Motion for a Temporary Restraining Order or Preliminary Injunction (Doc. No. 4, pp. 8-11), more than one hundred federal district courts across the country have issued favorable rulings for petitioners on largely indistinguishable facts from those presented in this case. Consequently, the Court finds that the Petitioner is likely to succeed on the merits of his habeas petition.

The Court will address the Respondents' arguments in turn. At the outset, the Court finds that the Respondents' interpretation conflicts with the plain language of Section 1225(b)(2)(A). Section 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a)." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is defined as the following:

---

briefing. See Doc. No. 11. The Court joins other courts in finding the BIA's interpretation to be inconsistent with the statutory language. See e.g., Belsai D.S. v. Bondi, No. 25-CV-3682, 2025 WL 2802947, at *7, fn. 5 (D. Minn. Oct. 1, 2025); Avila v. Bondi, No. CV 25-3741, 2025 WL 2976539, at *5, fn. 7 (D. Minn. Oct. 21, 2025); Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *6-7 (E.D. Mich. Sept. 9, 2025) (list of court decisions at odds with the BIA's interpretation of Section 1225(b)(2) in Hurtado). Consequently, the Court is unpersuaded by the BIA decision. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412-13 (2024).

[5] See, e.g., Avila, 2025 WL 2976539, at *5-7; Eliseo A.A. v. Olson, No 25-3381, 2025 WL 2886729, at *2-4 (D. Minn. Oct. 8, 2025); Belsai, 2025 WL 2802947, at *5; Singh v. Lyons, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Sanchez Ballestros v. Noem, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Lepe v. Andrews, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, 2025 WL 2712417, at *4-5 (N.D. Iowa Sept. 23, 2025); Hasan v. Crawford, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Velasquez Salazar v. Dedos, 2025 WL 2676729 (D. N.M. Sept. 17, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Pizarro Reyes, 2025 WL 2609425, at *4-7; Lopez-Campos v. Raycraft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Leal-Hernandez v. Noem, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Romero v. Hyde, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Aguilar Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . . .

Id. § 1225(a)(1). The Respondents argue that because "applicant for admission" is partly defined as "[a]n alien present in the United States who has not been admitted," all aliens who entered and remain in the country are applicants for admission subject to Section 1225(b)(2)(A). See Doc. No. 11. In other words, the Respondents argue that Beltran, an alien present in this country who has not been lawfully admitted, is subject to mandatory detention under Section 1225(b)(2)(A).

The Respondents' interpretation is flawed because Section 1225(b)(2)(A) does not apply to every alien who has not been lawfully admitted. In interpreting Section 1225(b)(2)(A), one must note how the qualifier "seeking admission" limits the class of aliens to which the statute applies to those seeking entry into the United States. Therefore an "alien present in the United States who has not been admitted" is only subject to Section 1225(b)(2)(A) if he is "seeking admission." See 8 U.S.C. § 1225(b)(2)(A).

The Respondents argue that Beltran continues to "seek admission" since he has been "identified by immigration authorities as unlawfully present, . . . [has] not cho[sen] to depart from the United States voluntarily[,]" and has "chose[n] to request a hearing before the Immigration Court to determine whether he may remain in the United States." See Doc. No. 11. The Respondents contend that in any event, "being an 'applicant for admission' *is* 'seeking admission'" Id. (emphasis added).

The Respondents' argument runs contrary to statements made *in dicta* by the United States Supreme Court when discussing the application of 8 U.S.C. §§ 1225 and 1226. See Jennings, 583

U.S. at 287-89. In *Jennings*, the Supreme Court begins its discussion of Section 1225 by stating the "process of decision [of who may enter the country] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien *seeking to enter the country* is admissible." Id. at 287 (emphasis added). The Supreme Court then states Section 1225(b) applies to aliens "*seeking admission* into the country." Id. at 289 (emphasis added). In comparison, the Supreme Court begins its discussion of Section 1226 by stating "[e]ven *once inside the United States*, aliens do not have an absolute right to remain there," and explains that Section 1226(a) applies to "certain aliens *already in* the country." Id. at 289. (emphasis added). Therefore, it follows that aliens already in the country are not "seeking admission" and thus are not subject to Section 1225, but rather Section 1226. See e.g., Avila, 2025 WL 2976539, at *5. The Respondents' argument that all non-admitted aliens present in the United States are "seeking admission" is contrary to the distinction between aliens already present in this country and those seeking to enter as noted by the Supreme Court. See Jennings, 583 U.S. at 287-89.

In addition, Respondents' argument that "every 'applicant for admission' is inherently and necessarily 'seeking admission[,]'" Doc. No. 11, violates the canon of surplusage. See United States ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S. 419, 432 (2023) (the canon against surplusage is an "interpretive principle that every clause and word of a statute should have meaning"). The Respondents argue that the structure of Section 1225(b)(2)(A) "indicates that any such redundancy simply serves to make the provision more readable," and that "[t]he canon against surplusage is not an absolute rule." See Doc. No. 11 (citing Marx v. Gen. Revenue Corp., 568 U.S. 371, 385 (2013)). However, the Respondents fail to acknowledge that the canon "is strongest when an interpretation would render superfluous another part of the same statutory scheme." Marx, 568 U.S. at 386. Not only are the terms "applicant for admission" and "seeking admission" in the same

10

statutory scheme, but they are within seven words of each other in the same sentence. See 8 U.S.C. § 1225(b)(2)(A). "[A]n alien seeking admission" thus must mean something different than "applicant for admission."[6] See 8 U.S.C. § 1225(b)(2)(A).

Respondents' interpretation also fails because it requires the reader to examine Section 1225(b)(2)(A) in isolation. Even statutory language that is unambiguous in isolation must be read in context. See Yates v. United States, 574 U.S. 528, 537 (2015) (plurality); Pulsifer v. United States, 601 U.S. 124, 133 (2024). Considering the language of Section 1225 alongside Section 1226 suggests that the more reasonable interpretation of Section 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they have gained entry without inspection. See e.g., Giron Reyes, 2025 WL 2712427, at *4. Section 1225 repeatedly refers to aliens entering the country. See 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); id. § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"); id. § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings). Further, the statute explicitly addresses "crewm[e]n" and "stowaways" reflecting that Congress intended "applicants for admission" to be aliens just arriving to the United States. See id. § 1225(b)(2). The sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. See 8 U.S.C. § 1225a. On the other hand, Section 1226(a) broadly refers to the arrest of "an alien" pending a decision on whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a).

---

[6] See e.g., Avila, 2025 WL 2976539, at *5; Belsai, 2025 WL 2802947, at *6; Guartazaca Sumba v. Crowley, No. 1:25-CV-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025).

11

Comparing the broad language in Section 1226 to the specific language in Section 1225 reveals that Section 1226 applies to aliens awaiting a removal decision, whereas "§ 1225 applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection." Giron Reyes, 2025 WL 2712427, at *4-5; Jennings, 583 U.S. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens . . . ."). Considering Section 1225 in its entirety and in relation to Section 1226 reveals that Section 1225 is more limited than what the plain text of Section 1225(a)(1) may indicate when construed in isolation. This observation has been supported by many other federal district courts.[7]

The Respondents also invoke legislative purpose to support their argument that Section 1225(b)(2)(A) should apply. However, it is not persuasive. The Respondents argue that their interpretation of Section 1225 and Section 1226 prevents an outcome that Congress sought to avoid when it adopted the Illegal Immigration Reform and Immigration Responsibility Act of 1996: affording more process to people who unlawfully entered the United States than to people who attempt to lawfully enter at ports of entry. See Doc. No. 11. This argument fails for two reasons. First, the plain text of Section 1225(b)(2)(A) and Section 1226(a) supports Beltran's position, and a nontextual policy argument cannot override the plain text. Sumba, 2025 WL 3126512, at *5 (quoting Southwest Airlines Co. v. Saxon, 596 U.S. 450, 563 (2022) ("[W]e are not free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal.") (cleaned up)). Second, even if the Respondents' policy argument was accepted, *arguendo*, other immigration statutes favor treating aliens differently depending on whether they have established

---

[7] See e.g., Belsai, 2025 WL 2802947, at *6; Giron Reyes, 2025 WL 2712427, at *4; Helbrum v. Williams Olson, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *4-6 (S.D. Iowa Sept. 30, 2025); Pizarro Reyes, 2025 WL 2609425, at *5; De La Cruz v. Noem, No. C25-150-LTS, 2025 WL 3110876, at *4 (N.D. Iowa Oct. 20, 2025); Alonso v. Tindall, No. 3:25-CV-652-DJH, 2025 WL 3083920, at *6 (W.D. Ky. Nov. 4, 2025).

ties in this country. Id.; 8 U.S.C. § 1225(b)(1)(A)(iii) (permitting expedited removal for people who enter unlawfully and have *not* been physically present in the United States for more than two years); 8 C.F.R. § 241.4(f)(5) (considering whether a detainee has "ties to the United States" as a "[f]avorable factor[]" against continued detention). It is not inconceivable that immigration policy would view a noncitizen who has already entered the United States as less of a flight risk and danger to the community if they have established ties to the country after entering.

The Respondents' interpretation of the immigration statutes also fails because it would cause the Laken Riley Act, a recent amendment to Section 1226(c), to be superfluous.[8] Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009). The Laken Riley Act was created to designate more classes of aliens as ineligible for bond under Section 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). However, under the Respondents' broad reading of Section 1225, the Laken Riley Act would have no purpose as Section 1225(b)(2)(A) "would already provide for mandatory detention of *every* unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens." Giron Reyes, 2025 WL 2712427, at *5 (emphasis added). Expanding Section 1225 to cover long-time residents would collapse the distinct detention systems Congress created and render Section 1226(c) superfluous. Eliseo, 2025 WL 2886729, at *4. The Respondents contend that their interpretation of the immigration statutes would not render Section 1226(c) superfluous. See Doc. No. 11. However, the Court agrees with the multitude of other federal district courts who have found otherwise. See e.g., Avila, 2025 WL 2876539, at *6; Giron Reyes, 2025 WL 2712427, at *5; Alonso, 2025 WL 3083920, at *6; Pizarro Reyes, 2025 WL 2609425, at *5; Sumba, 2025 WL

---

[8] Giron Reyes, 2025 WL 2712427, at *5; Helbrum, 2025 WL 2840273, at *4; Belsai, 2025 WL 2802947, at *6.

3126512, at *4; Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025).

Lastly, Respondents argue that Section 1226(a) does not apply to Beltran because the provision applies to aliens who are not "applicants for admission" but instead "aliens who have been admitted to the United States but are now removable." See Doc. No. 11. The Respondents do not cite any case law in support of this proposition, and this interpretation conflicts with the statute itself. Section 1226(a) provides for discretionary bond to aliens "arrested and detained pending" removal proceedings; it makes no distinction between admitted and unadmitted aliens. 8 U.S.C. § 1226(a). Further, Sections 1226(c)(1)(A), (D), and (E) carve out certain inadmissible immigrants from Section 1226(a)'s discretionary bond provision. Id. §1226(c)(1)(A), (D), (E). If Section 1226(a) only applied to admitted immigrants as the Respondents suggest, it would not be necessary for Congress to carve out certain inadmissible aliens. Saul Morales Chavez v. Director of Detroit Field Office, et al., No. 4:25-CV-2061, 2025 WL 3187080, at *5 (N.D. Ohio Nov. 14, 2025); see Giron Reyes, 2025 WL 2712427, at *5.

In summary, the Court finds that the discretionary detention framework of 8 U.S.C. § 1226(a) applies to Beltran rather than the mandatory framework of 8 U.S.C. § 1225(b). The Respondents' arguments contradict Congress's statutory framing, existing case law, and eliminate the bond protection Congress created in Section 1226(a). Thus, for purposes of Beltran's motion for a preliminary injunction, the Court finds he is likely to succeed on the merits of his habeas petition, at least to the extent that he is entitled to a bond hearing under Section 1226(a). The Court concludes this *Dataphase* factor weighs strongly in favor of granting a preliminary injunction.

## 2. IRREPARABLE HARM

Beltran must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." MKB Mgmt. Corp. v. Burdick, 954 F. Supp. 2d 900, 912 (D.N.D. 2013). The party seeking a preliminary injunction must show that a significant risk of harm exists. Id. The absence of such a showing is sufficient grounds to deny injunctive relief. Id. Thus, "the threat of irreparable harm" is a threshold inquiry. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987) (noting that "[t]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction").

The Respondents argue that Beltran's detention is not sufficient to cause irreparable harm because it is "mandatory under the statute for the duration of removal proceedings." See Doc. No. 11. Additionally, they argue the "[d]etention is not indefinite." See Doc. No. 11. The Petitioner has been in the United States for over five years without a criminal history that would subject him to 8 U.S.C. § 1226(c), and he has a young child and wife who are United States citizens. See Doc. No. 1. An immigration judge may decide to grant him bond if he were provided a hearing. In subjecting Beltran to mandatory detention throughout his removal proceedings under Section 1225(b)(2), the Respondents ensure Beltran will remain detained.

Beltran is currently being subjected to indefinite civil confinement. "There are only narrow, nonpunitive circumstances under which a special justification authorizes such restraint . . . [w]hich the removable status of an alien, standing alone, does not qualify." Giron Reyes, 2025 WL 2712427, at *4 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). Beltran's loss of liberty threatens irreparable harm. Barrajas v. Noem, No. 4:25-CV-00322, 2025 WL 2717650, at *6 (S.D.

Iowa Sept. 23, 2025) ("His loss of liberty is a paradigmatic example of potential irreparable harm."); see also Matacua v. Frank, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (characterizing "a loss of liberty" as "perhaps the best example of irreparable harm"). Even if an immigration judge does not release Beltran on bond, "the denial of his due process right to a hearing is also a form of irreparable harm." Barrajas, 2025 WL 2717650, at *6. The Court finds this *Dataphase* factor weighs in favor of granting a preliminary injunction.

### 3.  BALANCE OF HARMS AND THE PUBLIC INTEREST

The balance of harm factor requires consideration of the balance between the harm to the movant if an injunction is not issued and the injury the injunction's issuance would inflict on other interested parties. See Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harms factor examines the harm to all parties to the dispute and other interested parties, including the public. See Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991). Assessing the balance of harms and weighing the public interest are typically distinct factors. However, the factors merge when the federal government is the party opposing the injunction. Nken v. Holder, 556 U.S. 418, 435 (2009).

The Court believes Beltran's interest in receiving a bond hearing is significant. The Respondents contend the federal government has interests at stake as well—an interest in controlling the presence of aliens in the United States. See Dep't of State v. Munoz, 602 U.S. 899, 911-12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). However, an injunction simply requiring the Respondents to grant Beltran a bond hearing provides a very

limited imposition on the government's interests. The Court considers these merged *Dataphase* factors to be arguably neutral, but tilt far more in favor of the Petitioner than the Government.

### III.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Court finds the *Dataphase* factors clearly weigh in favor of the issuance of a preliminary injunction at this stage. Thus, the Petitioner's motion for preliminary injunction (Doc. No. 8) is **GRANTED** as follows:

(1.) The motion is **granted** to the extent it requests a preliminary injunction requiring a bond hearing before an immigration judge. The Respondents are hereby **enjoined** from depriving Beltran of an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and shall provide him with such a hearing within fourteen (14) days from the date of this Order.

(2.) If the Respondents do not provide the Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, the Petitioner must be released immediately from detention.

(3.) Within twenty (20) days from the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing is held, advise the Court regarding the Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required.

(4.) The Respondents are **enjoined** from removing, transferring, or otherwise facilitating the removal of the Petitioner from the District of North Dakota and the District of Minnesota before the ordered bond hearing.

The Respondents' response to the Petitioners' habeas petition is due within thirty (30) days from the date of this Order. Thereafter, the Petitioner has fourteen (14) days to reply to the Respondents' response. The Petitioner's motion for hearing (Doc. No. 6) on his preliminary injunction motion is moot and is therefore **DENIED**.

**IT IS SO ORDERED**.

Dated this 5th day of December, 2025.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court